IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARON ACKLEY, ) | |
| ) | Case No. CV-06-10-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | |
| ) | |
| BRUNEAU-GRAND VIEW ) | |
| SCHOOL DISTRICT, and JEFF ) | |
| KNIGHT, DIXIE BLACK, ) | |
| HOWARD FIELD, RAYMOND ) | |
| MEYERS, and STACY ) | |
| BUCKINGHAM, in their official ) | |
| capacities as members of the ) | |
| BOARD OF TRUSTEES OF ) | |
| BRUNEAU-GRAND VIEW ) | |
| SCHOOL DISTRICT, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## INTRODUCTION

The Court has before it defendants' motion for summary judgment and plaintiff's motion for partial summary judgment. The Court heard oral argument on April 5, 2007, and the motions are at issue. For the reasons expressed below, the Court will dismiss the single federal claim and decline to exercise jurisdiction over the remaining state-law claims.

## BACKGROUND

**Memorandum Decision – Page 1**

Sharon Ackley began working for Bruneau-Grand View School District in August 1995, teaching music until she obtained her elementary education endorsement in 2001. She taught kindergarten and first grade classes until she was terminated in March 2005.

In 2002, the District hired Dallas Taylor as its Superintendent and Richard Henderson as the Principal at Bruneau Elementary School where Ackley taught. Also in 2002, Darrel Agenbroad joined the Board of Trustees for the District.

In March 2004, Ackley conducted parent-teacher conferences. At the conference for student CW, Ackley recommended to that student's mother, FW, that the student be held back in the first grade due to reading problems. Although CW had performed "very well" on the standardized test known as the Idaho Reading Indicator (IRI), *see Ackley Deposition* at p. 42, CW was meeting with a reading specialist four times a week, and had, in Ackley's view, a "struggle" with reading. *Id*. at p. 39.

Ackley later talked to CW's grandmother, TH, about the recommendation to keep CW back a year. TH recalled that Ackley was "livid" because FW had attended the conference with her boyfriend. TH also recalls Ackley telling her that she had made this recommendation to "shake [FW] up." *See Hearing Transcript* at p. 156. When asked in her deposition if she made this statement, Ackley replied

**Memorandum Decision – Page 2**

"Anything is possible, but I don't remember the statement." *See Ackley Deposition* at p. 41.  Ackley claims that her concern was over sharing confidential information about CW with a non-family member.

In April 2004, parents of children who went to school in the District circulated a petition for the removal of Superintendent Taylor and Kathy Delle, a principal in the District.  Ackley participated in circulating this letter, and also campaigned to get Dixie Black on the Board.

On June 1, 2004, Principal Henderson issued a written reprimand to Ackley for failing to complete the required inventory of her room and return her school building keys by a certain deadline. Ackley claims that she had requested, and was granted, a time extension before the deadline.

In June 2004, the Board reprimanded Ackley for her participation in circulating the petition for the removal of Taylor and Delle, and threatened to take additional adverse employment action.  After Ackley's attorney complained to the Board that its letter violated Ackley's First Amendment rights, the Board removed the reprimand from Ackley's personnel file.

In June 2004, parents of the students initiated a recall proceeding against Board member Agenbroad.  In the recall election, after a tie vote, Mr. Agenbroad was allowed to retain his seat on the Board.

**Memorandum Decision – Page 3**

After a school fund-raising breakfast in September 2004, Ackley received the funds on October 1, 2004, but failed to turn them over to District officials until February 23, 2006. The Court will discuss this incident in more detail later in this decision.

In January 2005 Principal Henderson learned that Ackley incorporated the entire IRI test into her teaching materials. The IRI is a standardized test and the test booklets must be kept secure. If students are taught the test material, the results are invalid. Ackley believed it was permissible for her to teach from the booklet.

On January 14, 2005 Ackley was notified by Mr. Agenbroad that the Board had approved an issuance of a Notice of Recommendation of Possible Discharge against her. The hearing for the termination was set for February 3, 2005, but the Board indicated that the date could be postponed if Ackley needed extra time to prepare. Ackley was placed on immediate paid suspension until the hearing. At this time, the District hired a long-term substitute teacher to replace Ackley.

On January 27 Ackley's attorney sent a letter to the Board and the District requesting an extension on the hearing and also inquired about the long-term substitute teacher. The District granted the extension and set the hearing date for February 16 but did not respond to Ackley's questions about the long-term

**Memorandum Decision – Page 4**

substitute. Ackley's attorney sent another letter inquiring about the substitute on February 3. On February 4, the District responded that the long-term substitute was hired because it felt it was appropriate under the circumstances.

On February 10, 2005, the Board delivered to Ackley an Amended Notice of Recommendation of Possible Discharge that included additional violations of School Board policy and State Board of Education Rules. Because of the new allegations, the termination hearing was postponed until March 8, 2005.

On March 7, 2005, Ackley filed suit in state court seeking a temporary restraining order (TRO) to block the hearing on the ground that the Board was biased against her. She sued the Board and its individual members; she did not sue the District.

Judge Culet held the hearing by telephone. Two attorneys were on the line: James Piotrowski (representing Ackley) and Paul Stark. Judge Culet asked Stark whether he was representing the Board, and Stark responded, "[y]es your Honor, representing the school district." *See Transcript of Hearing* at p. 4. This equivocal answer makes it appear that Stark was representing both the Board and the District.

That appearance would be reinforced by Stark's arguments during the hearing. For example, Stark begins his argument by thanking Judge Culet for

**Memorandum Decision – Page 5**

"giving the school district an opportunity to be heard," *id*. at p. 25, but then appears to argue on behalf of the Board when he represents that "the board members, obviously, will have a different version than some of these individuals [who filed affidavits alleging that Board members were biased]." *Id*. at p. 30.

Stark attempts to clear up this confusion at the end of the hearing when, in response to Judge Culet's questioning, he explains that he is representing the District, and that the Board's attorney is Ken Mallea, who could not be present. *Id*. at p. 69.  Stark explains that he will not be contacting Board members directly about the hearing's results but will instead go through Mallea, "to kind of keep that separation [between the District and the Board] there." *Id*. at p. 70.

This explanation satisfied Judge Culet.  He stated in his Order that Stark "was only representing the interest of the School District and not the Board of Trustees." *See Order Clarifying Issuance of Temporary Restraining Order* at p. 1.

Yet Ackley points to two incidents occurring after the hearing that she alleges put the breadth of Stark's representation in question.  First, she submits the affidavit of her counsel, Piotrowski, who states that after the hearing – either later that same day or the next day – Stark informed him that Board Chairman Agenbroad would recuse himself and that the Board hearing would go forward as scheduled, inferring that Stark must have had contact with Board members.  *See*

**Memorandum Decision – Page 6**

*Piotrowski Affidavit* at p. 2.  However, the three Board members who ruled against Ackley each testified that "I had never met Mr. Stark prior to his appearance at the termination hearing on March 8, 2005 . . . [and that] [h]e was not my attorney in the civil suit filed by Ackley, nor was I ever represented by him."  *See Knight, Turner & King Affidavits.*

 The second incident occurred when Brian Julian, a name-partner is the lawfirm that employed Stark as an associate, filed an answer on behalf of the Board in Judge Culet's action.  The answer's front page lists Julian and Stark as "Attorneys for Defendants" with the named defendants being the Board itself and the individual Board members.  Ken Mallea is not listed as the Board's attorney.  The answer was filed on March 30, 2005, about 5 days after the Board had issued its decision firing Ackley.

 At the conclusion of the TRO hearing, Judge Culet stated that he would grant the TRO unless Board member Darrel Agenbroad recused himself.  The next day, Agenbroad recused himself, and the Board hearing went forward.

 At that Board hearing, Hearing Officer Ken Mallea, the Board's attorney, heard argument from Piotrowski representing Ackley, and Stark representing the District.  Piotrowski began his presentation by questioning the Board members concerning any bias they might have against Ackley.

**Memorandum Decision – Page 7**

Specifically, he asked them to confirm Mallea's representation that they had just been made aware – minutes before – of the hearing the day before in front of Judge Culet. *See Hearing Transcript* at p. 12. The Board members nodded in the affirmative. *Id*. Piotrowski then asked if the testimony of Dr. Taylor, the District Superintendent, "is more likely to be credible than any other staff member or patron of this district?" *Id*. According to the transcript, the Board members made "[n]o response." *Id*. Piotrowski next asked whether the testimony of Superintendent Taylor and Principal Henderson would be "more credible or believable than anybody else, just because of who they are? Would any of you have answered 'yes' to that question?" *Id*. Again, the transcript notes that the Board members made "[n]o response." *Id.*

Piotrowski labels these answers as "non-responsive," implying that the Board members were evasive. *See Ackley's Brief in Response to Defendants' Motion for Summary Judgment* at p. 5. But Piotrowski had earlier directed the Board members to respond by raising their hands if the answer to his question was "yes." *Id*. at p. 11. The obvious corollary was to make no response if the answer was "no." When the Board members failed to respond, they were not being evasive, but were simply following Piotrowski's directions.

During the hearing, Piotrowski was allowed to argue and present witnesses,

**Memorandum Decision – Page 8**

including Ackley, and to cross-examine the witnesses of the District. After all the testimony and argument was complete, the hearing was adjourned with the Board taking the matter under advisement.

About two weeks later, on March 25, 2005, the Board issued detailed Findings of Fact and Conclusions of Law. The Board concluded that there was "just and reasonable" cause to fire Ackley for two reasons: (1) Ackley "was improperly and unethically attempting to use [CW] as a pawn to show her criticism of [FW's] lifestyle and parenting;" and (2) Ackley violated Idaho state law and District policies regarding the handling and deposit of District funds. *See Findings & Conclusions* at pp. 6, 11.

With regard to the first finding, the Board relied in part on the fact that CW had "achieved a 113 score on the [IRI] test, which is the highest indicated possible score and which . . . results in a level 3 reading level." *Id.* at p. 7. The Board noted that Ackley failed to submit any documentation to support her assertion that CW struggled with reading, and found that the test score "completely belies any credible assertion that . . . the student was so deficient in her reading that she had to be retained in the first grade." *Id.*

With regard to the second finding, the Board found that Ackley obtained District funds on October 1, 2004, and that Idaho law and District policy required

**Memorandum Decision – Page 9**

her to immediately deposit those funds. Instead, she retained the funds for almost 5 months, intentionally keeping them from administration officials.

On January 16, 2006, the Professional Standards Commission (PSC) of the Department of Education filed an administrative complaint against Ackley. Following a hearing, the Hearing Panel concluded that Ackley had violated the Code of Ethics for, among other things, failing to turn over the District's funds.

The parties later entered into a stipulation under which (1) the PSC would dismiss the complaint against Ackley, (2) Ackley would waive her right to appeal the Hearing Panel findings, (3) Ackley's teaching certificate would be "retroactively suspended" from January 1, 2005, to January 1, 2006, and (4) Ackley would be required to take certain PSC-approved courses.

## ANALYSIS

**1.   Standard of Review**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the

**Memorandum Decision – Page 11**

depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## 2.     Procedural Due Process – Count One

Ackley alleges that her due process rights were violated because the Board proceeding resulting in her discharge was not neutral and unbiased. There is no dispute that she has a property interest in her continued employment with the District, requiring the Board to comply with the Due Process Clause before depriving her of that interest. *See Bd. of Regents v. Roth*, 408 U.S. 564 (1972).

The Due Process Clause entitles Ackley to "an impartial and disinterested tribunal." *See Marshall v. Jerrico*, 446 U.S. 238 (1980). To prevail on her claim of bias, Ackley must "overcome a presumption of honesty and integrity" that is accorded to the Board. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975).

There are two ways for Ackley to overcome this presumption. First, she may show actual bias on the part of the adjudicator. *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). Second, she may demonstrate that the adjudicator's "pecuniary or personal interest in the outcome of the proceedings creates an appearance of partiality that violates due process, even without any showing of actual bias." *Id*.; *see also Exxon Corp. v. Heinze*, 32 F.3d 1399, 1403 (9th Cir.1994) ("the Constitution is concerned not only with actual bias but also with

**Memorandum Decision – Page 12**

the appearance of justice").

There is no evidence of actual bias in this case. Ackley asserted at oral argument that a Board member made favorable statements about Superintendent Taylor, but the assertion is not found either in Ackley's briefing or her statement of facts. She cannot raise issues at oral argument that she failed to cover in her briefing. *See Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003). Moreover, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir.2001). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).[1]

Ackley's stronger argument is that there is an appearance of impartiality because Stark represented the Board at the TRO hearing and then argued before the Board at Ackley's termination hearing. She likens this to "a lawyer trying a case to a jury made up of the lawyer's own clients." *See Ackley's Brief* at p. 9.

If that was the situation here, the Court would agree that it would create an appearance of partiality. In *Miller v. Ririe Joint School District*, 973 P.2d 156

---

[1] If Ackley is relying on past actions taken by the Board against her – a point neither briefed nor argued – the Circuit has held that past adverse rulings are not enough to support a claim of actual bias. *See Stivers*, 71 F.3d at 741-42.

**Memorandum Decision – Page 13**

(Id.Sup.Ct. 1999), the trial court enjoined a school district from retaining attorneys to represent it at a teacher discharge hearing before a school board when those same attorneys had earlier advised the Board to seek the discharge. In that case, the attorneys had met with and advised the individual Board members on two different occasions in executive sessions of the Board. *Id*. at 157. The district court held that "there exists in the present case the appearance of impropriety and the possibility of conscious, or even unconscious, bias on the part of the Board in favor of the attorneys who represented them in a prior proceeding." *Miller v. Ririe Joint School District* CV-97-95 (Memorandum Decision filed March 21, 1997).

While that decision has no binding effect here because it was rendered by a state trial court in an injunction proceeding (and only the attorney fee award was at issue in the appeal), the Court nevertheless finds the reasoning persuasive. When an attorney representing the Board meets with, and gives counsel to, Board members in executive sessions concerning the discharge of a teacher, and then presents the District's case against that same teacher to the Board, a reasonable juror could conclude that the Board may be consciously, or unconsciously, biased in favor of their attorney.

That was not the case here, however. There is no evidence that Stark ever met with, or counseled, Board members. As recounted above, the Board members

**Memorandum Decision – Page 14**

stated that Stark did not represent them. While it may appear that Stark made arguments on behalf of the Board at the TRO hearing, his arguments were just as consistent with his representation of the District, an entity that was paying Ackley's salary and hence had a vital interest in seeing the hearing go forward without delay. Indeed, at the conclusion of the TRO hearing, Stark clarified any confusion by stating that he was not representing the Board but only the District. Judge Culet was not confused – he specifically found in his Order, discussed above, that Stark was not representing the Board.

The Court is concerned, however, with the answer filed by Stark's firm on behalf of the Board in the TRO action. While it is clear that Stark was not representing the Board either at the TRO hearing on March 7th or the discharge hearing on March 8th, it appears that sometime after March 8th, Stark – or at least his firm – was retained by the Board. This raises the question whether Stark was retained by the Board during the time the Board was considering its decision that was eventually issued on March 25th.

However, there is no evidence that even creates an issue of fact on this question. At most, the answer shows that Stark represented the Board on March 30th, a date 22 days after the discharge hearing and 5 days after the Board rendered its decision. Ackley has produced no evidence raising any issue that Stark

**Memorandum Decision – Page 15**

represented the Board prior to March 30th. The Board is entitled to a presumption of "honesty and integrity." *Withrow,* 421 U.S. at 46. In the absence of any evidence that Stark ever met with or counseled the Board members, or was retained by the Board prior to March 30th, no reasonable juror could find an appearance of impartiality that would violate Ackley's procedural due process rights.

In conclusion, the Court finds that Ackley has not raised any genuine issue of material fact concerning actual bias or the appearance of bias. For this reason, the Court will grant Bruneau-Grand View's motion for summary judgment on Ackley's procedural due process claim, and deny Ackley's motion.

**3.     Supplemental Jurisdiction**

This resolves the single federal claim asserted in the complaint. The remaining claims are all state-law claims. There are no allegations in the complaint that would satisfy the demands of diversity jurisdiction.

Under these circumstances, the Court has the discretion to decline to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c). This is especially true when the remaining claims raise novel claims under state law. *Id*. at § 1367(c)(1). That is true here. The remaining claims raise the novel question under Idaho law concerning the standard for reviewing decisions of local school boards discharging teachers. For this reason, the Court

will exercise its discretion to decline jurisdiction over the remaining claims.

Because this dismissal is jurisdictional in nature, it does not operate "as an adjudication upon the merits." *See* Rule 41(b). In addition, the statute of limitations on the state law claims is tolled as of the complaint's filing date in this case, and for 30 days after this dismissal "unless State law provides for a longer tolling period." *See* 28 U.S.C. § 1367(d); *see also Jinks v. Richland County*, 538 U.S. 456 (2003) (upholding constitutionality of § 1367(d)). Thus, Ackley will not face dismissal on statute of limitations grounds if this action was timely filed and she promptly (within 30 days) re-files this case in state court.

The Court will enter a separate Judgment as required by Rule 58(a).

DATED: **April 23, 2007**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge